Steven James BODIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1619–89.

Court of Criminal Appeals of Texas, En Banc.

March 13, 1991.

Rehearing Overruled April 24, 1991.

Frank R. Hughes, Crosby, for appellant.

John B. Holmes, Jr., Dist. Atty. & Timothy G. Taft, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

MILLER, Judge.

After appellant's motions to suppress and to disclose the identity of the informer were denied, he pled guilty pursuant to a plea bargain before the court to possession of less than 28 grams of methamphetamine, and was sentenced to seventeen years confinement. The conviction was affirmed. *Bodin v. State*, 782 S.W.2d 258 (Tex.App.—Houston [14th] 1989). We granted appellant's petition for discretionary review to determine whether the trial court properly refused to order the State to disclose the name of the informer. We will reverse.

The following facts are taken from the Court of Appeals' opinion, *id.* at 260:

Officer Virgil Price of the Houston Police Department testified he and his partner, Officer Mitchell, put together a controlled buy of narcotics on September 7, 1988, after receiving information from a confidential informant that appellant was engaged in drug trafficking at appellant's residence.... Officers Price and Mitchell gave their confidential informant twenty-five dollars and watched him go inside appellant's apartment. Price stated the informant emerged four or five minutes later with the methamphetamine just purchased from appellant. The informant provided Price with a description of appellant. Price then prepared an affidavit and search warrant which was later approved and signed by Judge Kolenda.

Officers found the methamphetamine, which formed the basis of this conviction, in a key box when they executed the search warrant.

On appeal appellant argued that the trial court erred in refusing to order disclosure of the informer's identity under Texas Rule of Criminal Evidence 508(c)(2), which provides in part:

If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

Appellant contended that the trial court should have ordered disclosure or, in the alternative, given the State an opportunity to show in camera facts relevant to whether the informer could supply such testimony.

The Court of Appeals cited *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the Supreme Court recognized the informer identity privilege. The Court of Appeals held that the record lacked evidence to show that the informer participated in the offense, was present at the time of the offense or arrest, or was a material witness.

The court then considered appellant's testimony at trial. Appellant stated that a man named James brought drugs into his apartment on September 7, 1988. James "did some drugs" when appellant was in the bedroom, then left fifteen minutes later. Appellant noticed a key box sitting on his kitchen table, and assumed James had left the box. Appellant put the box in his pocket, meaning to later return it to James when the police entered the apartment with the search warrant. Officers found the methamphetamine in the key box.

The Court of Appeals noted that since James was the person appellant needed to prove his innocence, and since appellant intended to return the key box to James, appellant presumably knew not only James' identity, but his location. With regard to the request for in camera disclosure, the court held that only the public entity could request such a hearing, citing *Hall v.*

*State,* 778 S.W.2d 473 (Tex.App.—Houston [14th] 1988, pet. ref'd). The court also held that the trial court was apparently satisfied that the informer could not provide testimony necessary to a fair determination of guilt, so the State did not need to request an in camera hearing to determine whether the informer could, in fact, supply such testimony.

In his petition, appellant contends that the information he sought was whether James was the informer. If James were the informer, then his presence at the apartment before appellant's arrest would be material evidence regarding a possible entrapment defense. In his brief, appellant cites *Thompson v. State,* 741 S.W.2d 229 (Tex.App.—Fort Worth 1987, no pet.), and asks this Court to adopt Justice Hill's suggested procedure that if an informer may give testimony necessary to a fair determination of guilt, then the court shall conduct an in camera hearing. Appellant also argues that the Court of Appeals' reference to *Hall* was misplaced since that case concerned Tex.R.Crim.Evid. 508(c)(3), which is worded differently than Rule 508(c)(2). Appellant also cites *Kee v. State,* 666 S.W.2d 199 (Tex.App.—Dallas 1983), discretionary review dismissed as improvidently granted, 758 S.W.2d 798 (Tex.Cr.App.1989), for the holding that disclosure is appropriate when the informer's identity is relevant to guilt or innocence. He reiterates his claim that disclosure of the informer's identity was essential to a fair determination of guilt or innocence and the defense of entrapment.

■ In order to adequately address appellant's claims, a review of the law relating to informer's identity is necessary. Under federal law, the government has a privilege not to disclose the identity of its informers. This privilege was applied in *Scher v. United States,* 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938), when the Supreme Court observed that public policy forbids disclosure of an informer's identity unless it is essential to the defense. The privilege was later discussed in *Roviaro,* in which the Supreme Court stated:

The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id.* 353 U.S. at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 643.

Wigmore explained the basis for the rule as follows:

Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he

will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him.... Revelation of the dual role played by [professional informers] ... ends their usefulness to the government and discourages others from entering into a like relationship.

8 J. Wigmore, *Evidence,* Sec. 2374 (McNaughton Rev.1961).

In *Roviaro,* the Supreme Court held that no fixed rule could be formulated as to when identity had to be disclosed. Rather, the public interest in protecting the flow of information had to be weighed against the accused's right to prepare a defense. Under cases interpreting *Roviaro,* however, disclosure may be deemed appropriate in several situations.

■ For instance, identity may be disclosed when an informer is likely to be a "material witness" because he or she has information critical to the defense on such issues as identity of the culprit, events in the crime, or defensive matters such as entrapment. See *United States v. Barnes,* 486 F.2d 776 (8th Cir.1973). See also *United States v. Ordonez,* 737 F.2d 793 (9th Cir.1984), and *United States v. Gonzales,* 606 F.2d 70 (5th Cir.1979).

■ Texas Rule of Criminal Evidence 508 establishes the state informer's identi-

ty privilege. Initially, we must determine whether federal cases interpreting the federal rule may be used when interpreting Rule 508. The wording of Tex.R.Crim. Evid. 508 is almost identical to the wording of proposed Federal Rule of Evidence 510, which was not enacted. Rather than recognizing specific privileges, Congress adopted the flexible approach to federal privileges by enacting Fed.R.Evid. 501, which provides that privileges shall be governed by the "principles of the common law as they might be interpreted by the courts of the United States in the light of reason and experience." Thus, under federal law courts determine privilege issues based on the confidential relationships involved on a case-by-case basis. See Fed.R.Evid. 501 advisory committee's notes.

In contrast, Tex.R.Crim.Evid. 501 directs that only those privileges prescribed under the Evidence Rules, constitution, statute, or court rule are recognized for state criminal cases. The state approach is therefore opposite from the federal approach.

█ Generally, the Texas Rules of Criminal Evidence were patterned after the Federal Rules of Evidence. Cases interpreting federal rules should be construed for guidance with regard to Texas Evidence Rules, unless the Texas rule clearly departs from its federal counterpart. See *Campbell v. State*, 718 S.W.2d 712 (Tex.Cr.App.1986).

█ Since Tex.R.Crim.Evid. 508 has no federal counterpart, and since the Texas approach to privileges differs greatly from the federal approach, the federal cases would seem to be of little value when interpreting the Texas rule. Two factors, however, militate in favor of using relevant and helpful federal caselaw when interpreting the Texas rule. First, the informer privilege under state and federal law is based on the Supreme Court case, *Roviaro*. Texas courts did not recognize an independent state privilege, and prior to enactment of Rule 508, used *Roviaro* and the federal cases in interpreting the Texas privilege. Second, the rule adopted in Texas was based on a proposed federal rule, which was itself based on *Roviaro*. Thus, federal cases interpreting *Roviaro* could still be of

benefit. We will therefore use federal cases when such cases are helpful to resolution of state informer identity privilege issues.

Now we turn to Rule 508 to consider its application in the instant case. The Rule provides for three exceptions. The privilege does not apply if the informer's identity has been voluntarily disclosed, if the informer may be able to give testimony necessary to a fair determination of guilt, or if a judge is not satisfied that information was obtained from an informer reasonably believed to be reliable. The second exception is implicated in the instant case.

Under Texas law before enactment of Rule 508, courts acknowledged the informer identity privilege, as established in *Roviaro*, and held that disclosure was not required unless:

1. The informer participated in the offense;

2. Was present at the time of the offense or arrest; or

3. Was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged.

See *Bernard v. State*, 566 S.W.2d 575 (Tex. Cr.App.1978), and cases cited therein at 577, *Gaffney v. State*, 575 S.W.2d 537 (Tex. Cr.App.1978), and *Varela v. State*, 561 S.W.2d 186 (Tex.Cr.App.1978). See also *Horst v. State*, 758 S.W.2d 311 (Tex.App.—Amarillo 1988, pet. ref'd); *Cortez v. State*, 685 S.W.2d 467 (Tex.App.—Fort Worth 1985, pet. ref'd); *Yarborough v. State*, 652 S.W.2d 831 (Tex.App.—Fort Worth 1983, pet. ref'd); and *Harrelson v. State*, 654 S.W.2d 712 (Tex.App.—Houston [14th] 1983, pet. ref'd). See also *Kee*, supra. The informer had to be placed within one of these three categories before disclosure could be compelled. See *Bernard*, supra. The Court of Appeals referred to these three situations in its opinion, *Bodin*, 782 S.W.2d at 260.

█ Under current law, however, Rule 508(c)(2) requires only that the testimony be "necessary to a fair determination of

the issues of guilt, innocence." [1] Thus, the new rule is broader than that applicable under the prior law as set forth in *Bernard,* and the Court of Appeals erred by restricting application of the exception to the three categories relevant before Rule 508 was adopted.

■ The next issue to resolve is the amount of proof necessary for the defendant to show that testimony may be necessary to a fair determination of guilt or innocence. The informer's potential testimony must significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient. *United States v. De Los Santos,* 810 F.2d 1326, at 1331 (5th Cir.1987), citing *United States v. Ayala,* 643 F.2d 244 (5th Cir.1981), and *United States v. Diaz,* 655 F.2d 580 (5th Cir.1981). See also *United States v. Silva,* 580 F.2d 144 (5th Cir.1978), appeal after remand 611 F.2d 78, and *United States v. Worthington,* 544 F.2d 1275 (5th Cir.1977), cert. denied, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72.

■ The defendant has the threshold burden of demonstrating that identity must be disclosed. *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), rehearing denied 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303. Since the defendant may not actually know the nature of the informer's testimony, however, he or she should only be required to make a plausible showing of how the informer's information may be important. See, e.g., *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

■ Evidence from any source, but not mere conjecture or speculation, must be presented to make the required showing that the informer's identity must be disclosed. *Horst v. State,* 758 S.W.2d 311 (Tex.App.—Amarillo 1988, pet. ref'd), citing *Gaffney v. State,* 575 S.W.2d 537, 542 (Tex. Cr.App.1978). See also *United States v. Buffington,* 815 F.2d 1292 (9th Cir.1987), *United States v. Alexander,* 761 F.2d 1294

(9th Cir.1985), and *United States v. Gonzales,* 606 F.2d 70 (5th Cir.1979). The mere *filing* of a Rule 508 motion is insufficient to obtain a hearing, much less compel disclosure. See *Smith v. State,* 781 S.W.2d 418 (Tex.App.—Houston [1st] 1989, no pet.).

■ We now turn to the issue of whether, in the instant case, there was sufficient information presented to show that the informer could give testimony necessary to a fair determination of guilt. The State's evidence showed that the informer told the police that appellant was engaged in drug trafficking. The police arranged for the informer to go into appellant's apartment on September 7, 1988. The informer emerged with methamphetamine and told police he had purchased it from appellant. Police used the informer's information to procure a search warrant, which when executed the next day, led to discovery of the methamphetamine appellant was charged with possessing. Appellant testified that James left the drugs in the apartment the day before the search. Appellant wanted to know the informer's identity so that if James were the informer, appellant could pursue an entrapment defense. Also, since the informer stated he bought drugs from appellant, and since appellant claims James left the drugs in the apartment, the informer may have had information material to the defense.

Based on these facts, we hold that appellant made a plausible showing that the informer could give testimony necessary to a fair determination of guilt. The informer had information material to appellant's possession of drugs, and could have had information relevant to possible entrapment. The trial court should have therefore conducted an in camera hearing to determine whether the informer could, in fact, supply such information.

We reject the Court of Appeals' finding that since appellant knew James and where to find him, appellant had no need of the

---

**1.** In *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 645, the Supreme Court stated that disclosure would be appropriate when such information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,...."

informer's identity. Whether James was the informer was the precise information appellant needed. He could use the other information concerning James and his location once appellant knew whether James was, in fact, the informer. Thus, appellant was missing the key link in the chain.

■ We also reject the Court of Appeals' holding that under Rule 508(c)(2), only the public entity may request the in camera hearing. Rule 508(c)(2) states that once evidence is presented showing the informer may provide testimony necessary to a fair determination of guilt, and the state invokes the informer's privilege, the judge *shall* give the public entity a chance to show in camera whether the informer can, in fact, supply that testimony. While the State causes the in camera hearing by invoking the privilege, there is no indication in the rule that only the State may *request* such a hearing.[2]

In sum, appellant presented sufficient evidence to merit an in camera hearing and the State invoked the informer's privilege. The trial court erred by failing to hold the in camera hearing and to further comply with Rule 508(c)(2). The Court of Appeals erred by overruling appellant's second point of error.

Accordingly, the judgments of the Court of Appeals and the trial court are reversed, and the case is remanded to the Court of Appeals for further proceedings not inconsistent with this opinion.

---

**2.** In contrast, Rule 508(c)(3), states, in part, that "[t]he judge shall, on request of the public entity, direct that the disclosure be made in camera." Also, the court's reliance on *Hall v. State,* 778 S.W.2d 473 (Tex.App.—Houston [14th] 1988, pet. ref'd), is misplaced since that case concerned application of Rule 508(c)(3).