OPINION ON APPELLANT’S PETITION FOR DISCRETIONARY REVIEW
OVERSTREET, Judge.
Appellant was charge by indictment for the offense of delivery of methamphetamine in an amount less than 28 grams[1] alleged to have been committed on July 17, 1987. On February 8, 1988, in the 54th District Court of McLennan County, Texas, appellant was found guilty by a jury and on the following day was sentenced to 99 years confinement in the Texas Department of Corrections[2] and a fine of $20,000. We granted a single ground for review which complains of the trial court’s ruling that appellant was not entitled to disclosure of the identity of an informant.[3]
I.
SUMMARY OF PERTINENT FACTS
The record reveals that an undercover officer for the Waco Police Department testified that he received information concerning a possible sale of drugs and that in July of 1987 appellant sold him what was purported to be a half a gram of “speed” for fifty dollars. Joel Budge, a Texas Department of Public Safety chemist, testified that the substance was actually 0.13 grams of methamphetamine. As the undercover officer was testifying on cross-examination, the following colloquy took place:
[APPELLANT’S ATTORNEY]: Did anybody accompany you over there?
[WITNESS]: There were several people in and out of the apartment.
THE COURT: You said there were what?
[WITNESS]: There were several people in and out of the apartment.
[APPELLANT’S ATTORNEY]: Did anybody specifically go with you?
[WITNESS]: Yes, ma’am. There was someone that was with me.
[APPELLANT’S ATTORNEY]: Okay. Was that another police officer?
[WITNESS]: No, ma’am.
[APPELLANT’S ATTORNEY]: Was that someone you got the tip from?
[PROSECUTOR]: May we approach the bench, Your Honor?
*71 THE COURT: Yes, sir.
Whereupon there were discussions out of the presence of the jury. These include the following:
THE COURT: All right. Go ahead. Outside — let me ask you this: Maybe I misunderstood. Did you testify in front of the jury — we’re outside the presence of the jury at this time. Did you testify that there was someone with you at the time that you made the buy?
[THE WITNESS]: Yes, sir.
THE COURT: And did that person observe the transaction?
[THE WITNESS]: Yes, sir.
THE COURT: All right. And was that the informant?
[THE WITNESS]: Yes, sir.
Further discussions included questioning the undercover officer about the specifics of the degree of personal danger to the informant if his identity was disclosed. In fact, in response to a question from the trial court inquiring of what indications there were for believing that harm might result if the informant’s identity was revealed, the officer testified to the effect that the nature of the street is such that when somebody gets labeled as a snitch there is a tendency to sometimes retaliate against such a person. It was also revealed that the informant had been paid for the information. The trial court ruled that he was “going to overrule the request and not require them to reveal it.”[4]
Appellant’s claim on appeal is that the trial court’s ruling, failure to require disclosure of the informant, was error warranting reversal. The Tenth Court of Appeals overruled that claim holding that even though the informant was present and observed the officer purchase the drug from appellant, “he was not a material witness as to whether the appellant knowingly committed the crime charged.”[5] Anderson v. State, No. 10-88-085-CR (Tex.App.— Waco, delivered April 20, 1989). It added that the evidence did not conclusively establish that the testimony of the informant was necessary to the State’s case or appellant’s defense and that the trial judge was entitled to decide that the probability of harm to the informant outweighed any benefits to appellant if the informant’s name was divulged. In making its decision, the court of appeals discussed at length Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
II.
INFORMANT DISCLOSURE LAW
In Bodin v. State, 807 S.W.2d 313 (Tex.Cr.App.1991), this Court reviewed the law relating to the informer identity privilege. Prior to the enactment of Texas Rule of Criminal Evidence 508, Texas courts did not recognize an independent State privilege and used Roviaro and the Federal cases in interpreting the Texas privilege. Id. at 317. It was well settled that disclosure was not required unless the informer: 1) participated in the offense; or 2) was present at the time of the offense or arrest; or 3) was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged. Id.; Rodriguez v. State, 614 S.W.2d 448 (Tex.Cr.App.1981). However, Rule 508(c)(2), which was in effect when appellant’s case was tried, requires only that there be a reasonable probability that the informant can give testimony “necessary to a fair determination of the issues of guilt, innocence.” Thus, because Rule 508 provisions are broader than that applicable under the prior law, the exception to the informer identity privilege is not restricted to the three categories listed *72 above. Bodin v. State, 807 S.W.2d at 318. We have held that a defendant is only required to make a plausible showing that the informer could give testimony necessary to a fair determination of guilt. Id.
In reviewing the testimony before the trial court in the instant cause, appellant made such a plausible showing by the officer’s testimony that the informant was present when the delivery transaction was made. We again note the following dialogue which indicates such:
THE COURT: All right. Go ahead. Outside — let me ask you this: Maybe I misunderstood. Did you testify in front of the jury — we’re outside the presence of the jury at this time. Did you testify that there was someone with you at the time that you made the buy?
[THE WITNESS]: Yes, sir.
THE COURT: And did that person observe the transaction?
[THE WITNESS]: Yes, sir.
THE COURT: All right. And was that the informant?
[THE WITNESS]: Yes, sir.
This showing not only meets the provisions of Rule 508 but also met the second and third exceptions mentioned above, which required disclosure if the informant was present at the time of the offense or was shown to be a material witness to the transaction. Whenever it is shown that an informant was an eyewitness to an alleged offense then certainly that informant can in fact give testimony “necessary to a fair determination of the issues of guilt, innocence.” Thus, we hold that appellant was entitled to disclosure of the informant’s identity and the trial court erred in failing to instruct the officer to disclose such or to proceed with the procedures delineated in Rule 508(c)(2) in the event the State, via the officer, elected not to make such disclosure. We must next determine whether such error was harmless.
III.
HARM ANALYSIS
Tex.R.App.Proc. 81(b)(2) mandates that we reverse the judgment under review unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. In Harris v. State, 790 S.W.2d 568 (Tex.Cr.App.1989), we articulated a coherent standard for determining when an error is harmless. We do not determine harmlessness simply by examining whether there exists overwhelming evidence to support the verdict of guilt, but rather calculate as much as is possible the probable impact of the error on the jury in light of the existence of the other evidence. “A procedure for reaching this determination should: first, isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of an individual case; and second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.” Id. at 588. In performing the isolating analysis, we examine the source and nature of the error, whether or to what extent it was emphasized by the State, its probable collateral implications, and consider how much weight a juror would probably place upon the error and determine whether declaring it harmless would encourage the State to repeat it with impunity. Id. at 587.
The nature of the error in the instant cause was the failure to instruct the State to disclose the identity of the informant who was present at the scene of and observed the transaction. The source was the trial court’s ruling in not requiring that the identity be revealed and the State’s arguments in support of such. The record reflects that it was not emphasized by the State at all, either at guilt/innocence or punishment.[6] At guilt/innocence jury argument, the trial court sustained the State’s objection to appellant’s argument about the police officer not revealing infor *73 mants and instructed the jury to disregard that statement for any purpose whatsoever.[7] Since this was information which the jury did not receive, jurors probably placed no weight at all on its absence.[8] Ascertaining the probable collateral implications of that absence is a bit more problematic.
The police officer testified that though there were other people present in the apartment where the sale took place, the unnamed informant was the only other person present to actually witness it.[9] Clearly the informant could provide evidence corroborating or disputing the officer’s testimony regarding appellant’s actions. The officer also testified that the reason he was accompanied by the informant was for introduction purposes, thus indicating that appellant and the officer were not mutual acquaintances. The officer’s testimony revealed that he had seen appellant only twice and both occasions were the date of the alleged offense. Appellant’s primary jury arguments at guilt/innocence focused upon possible mistaken identity. Thus, the error did have the potential collateral effect of depriving appellant of an unknown potentially exculpatory witness.
Declaring such error harmless might, or might not, encourage the State to repeat it with impunity. We do note that in the instant cause, the prosecutor at trial while arguing the issue before the trial judge said, “Unfortunately, the caselaw does not agree with my position.” Nevertheless, such did not prevent him from continuing to argue, apparently quite persuasively, in favor of his position for nondisclosure. Such sentiment does not bode well for the prospect of not being encouraged to repeat the error with impunity.
Next, we must ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. Id. at 588. With the error having the potential collateral effect of depriving appellant of an unknown potentially exculpatory witness, a rational trier of fact might have conceivably reached a different result had the informant been disclosed and appellant been able to successfully impugn the police officer’s identification.
IV.
CONCLUSION
It is the effect of the error and not the existence of overwhelming evidence or the lack thereof that dictates our judgment. Orona v. State, 791 S.W.2d 125, 130 (Tex. Cr.App.1990). We cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Tex.R.App.Proc. 81(b)(2). Thus the judgment of the court of appeals is hereby reversed and the cause remanded to the trial court for proceedings consistent with this opinion.
McCORMICK, P.J. and WHITE, J„ concur in result only.
CAMPBELL and BENAVIDES, JJ., concur in the result, not totally agreeing with the harmless error analysis of the majority.

. Such was a violation of TEX.REV.CIV.STAT. ANN. art. 4476-15, §§ 4.02(b), 4.03 (Vernon Supp.1987), repealed and now codified as TEX. HEALTH & SAFETY CODE ANN. §§ 481.102, 481.112 (Vernon Pamph.1991).

. Now known as the Texas Department of Criminal Justice — Institutional Division.

.Specifically, the ground for review reads that "[t]he Court of Appeals erred in holding appellant was not entitled to disclosure of the identity of an informant, where the informant introduced the undercover officer to appellant and was present at the time the offense was committed.”

. Our review of the record reveals that appellant never specifically asked the officer for the identity of the informant or for the trial court to order that such be revealed. However, based upon the discussions amongst the attorneys and the trial judge, it is quite apparent that such revelation was appellant’s desire and what the State sought to prevent. In light of those discussions and the trial court’s above mentioned adverse ruling, we conclude that the claimed error has been preserved for appellate review.

. We note that the Tenth Court of Appeals came to the same conclusion as did we with regard to the interpretation of the officer’s testimony regarding the informant’s presence at the time of the actual delivery.

. The State only presented testimony from two witnesses at each stage: the undercover officer and a chemist at guilt/innocence, and a fingerprint expert and a deputy district clerk at punishment.

.Appellant’s successfully challenged argument was as follows:
“Then he told you that he got some information first that somebody was dealing drugs over at this apartment. Then he talked to a second person. Told them who this was. Wouldn’t tell us who those people were. Where he got his information.” The prosecutor then objected to that line of argument as “[c]ommenting on the failure to disclose the informant’s identity. And the Court’s already ruled on that matter.”

. We note that Rule 508 contemplates disclosure to the accused, and as such the jury will not necessarily even be informed of the informant’s identity even when it is revealed, unless that informant is himself called as a witness or discussed by another witness.

. The actual delivery apparently took place near a bathroom in a bedroom.